**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 05-777-C**

**KCH SERVICES, INC.,**                                                                                              **PLAINTIFF,**

**V.**                         **MEMORANDUM OPINION AND ORDER**

**VANAIRE, INC., ET AL.,**                                                            **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion to stay the proceedings in this case and compel arbitration (DE 74), the plaintiff's motion for leave to file a "Restated Second Amended Complaint" (DE 86), and the defendants' motions to dismiss two of the plaintiff's claims, which were filed on the same pleading as the defendants' response to the plaintiff's motion for leave to file its Restated Second Amended Complaint (DE 93, 96). In their reply in support of their motion to compel arbitration, the defendants also suggest that the plaintiff's unfair competition claim is barred by res judicata, which the court will construe as an additional motion to dismiss in part. (DE 83-1 at 4.) Also in this reply, the defendants advance an alternative argument to their motion to compel arbitration, seeking to preclude certain testimony and evidence. *See id.* at 3 (arguing, inter alia, that the plaintiff should be "estopped from now presenting evidence inconsistent with the factual underpinnings" of past litigation and a previous settlement agreement). The court will construe this argument as an alternative motion in limine. Having reviewed the record and being otherwise advised, the

court will deny the defendants' motion to stay the proceedings and compel arbitration (DE 74), will deny the defendants' motions to dismiss (DE 83, 93, 96), but will grant the defendants' alternative motion in limine (DE 83). The court will also deny the plaintiff's motion for leave to file the Restated Second Amended Complaint (DE 86).

## I. BACKGROUND

The defendants' pending motion to compel arbitration and motion in limine are based on a 1995 settlement agreement (the "Agreement") signed by three parties: the plaintiff in this matter, KCH Services, Inc. ("KCH"); a defendant in this matter, Vanaire, Inc. ("Vanaire");[1] and Arthur G. Brooks, Jr., who was an employee of Vanaire and a former employee of KCH at the time of the Agreement.[2] KCH, Vanaire, and Brooks entered into the Agreement in order to avoid the costs and expenses of a suit filed by KCH against Vanaire and Brooks, and "the essence of the[] Agreement" was "that Brooks may . . . work at Vanaire subject to the restrictions detailed in this Agreement." (DE 74-3 at 2.) The Agreement also provided that "no party by the execution of this document is admitting to liability, which is expressly denied by each party to this Agreement." *Id.* at 4. Moreover, the parties also agreed to "fully and forever release, acquit and discharge each

---

[1] More specifically, the Agreement bound "Vanaire, a Division of Vanegas Enterprises, Inc. . . . ., and any and all affiliated persons, firms or corporations . . . ." (DE 74-3 at 2-3.)

[2] According to KCH, Brooks has since returned to work at KCH. *E.g.*, DE 75-1 at 1.

2

other from any and all liability on account of any and all claims, . . . whether known or unknown, . . . which any party may have had, . . . now has or may have against another party" based on any omission or act "occurring before the execution of this Agreement." *Id.* at 6-7. Finally, the parties agreed that if "any party to this Agreement has a dispute concerning the interpretation or enforceability of this matter . . . . it is agreed by all parties that the dispute shall be settled by arbitration, which shall be final and binding." *Id.* at 5.

The pending motion to compel arbitration is also based on the Second Amended Complaint in this suit (DE 67), which includes a claim of unfair competition against the defendants as Count VI. In this unfair competition claim KCH alleges that the defendants engaged in "a concerted pattern of unfair competition against KCH by luring KCH employees to join Vanaire and reveal and/or to utilize confidential information of KCH to Vanaire." (DE 67-1 at 3.) According to KCH, the defendants engaged in this "relentless, continuing pattern . . . over many years," ultimately obtaining KCH's confidential or proprietary information from five KCH employees, including Brooks, who was a party to the Agreement. *Id.* at 3-4. More specifically, KCH alleges, four of these five employees "delivered and revealed" or "provided" or "unfairly used" KCH's information to or for Vanaire's benefit; however, with respect to Brooks, the Second Amended Complaint alleges that he merely "witnessed . . . Vanaire improperly and unfairly using KCH confidential information" to damage KCH. *Id.*

3

In their motion to stay these proceedings and compel arbitration, the defendants argue that because "KCH has made claims with respect to actions involving Mr. Art Brooks" which were settled pursuant to the Agreement and its arbitration clause, this court should "stay all the unfair competition claims involving former employees until arbitration of the prior settlement and release is completed." (DE 74-1 at 3.) Additionally, in what the court will construe as an additional motion to dismiss in part, the defendants suggest that KCH's unfair competition claim is barred by res judicata because the facts underlying the current claim fall within the parameters of the Agreement and the previous litigation. (DE 83-1 at 3-4.) Finally, in what the court will construe as an alternative motion in limine, the defendants argue that even if this court declines to compel arbitration, "any testimony offered by Brooks – or for that matter any witness – about improper acts allegedly occurring" through the date of the first litigation and the Agreement "must be precluded" under the doctrines of res judicata or judicial estoppel, and KCH must also be "estopped from now presenting evidence inconsistent with . . . the terms of the Settlement Agreement." *Id.* at 3. In response, KCH argues that the single reference to Brooks as a witness in the Second Amended Complaint does not strip KCH of its jury-trial rights on its unfair competition claim "because it is obvious that KCH's Amended Complaint does not seek to enforce or interpret the Settlement Agreement." (DE 75-1 at 1.)

On May 16, 2007, the plaintiff filed the presently pending motion for leave

4

to file its "Restated Second Amended Complaint" (DE 86). The defendants' response to this motion, along with the presently pending motion to dismiss two of the plaintiff's claims (DE 93, 96), was filed on June 28, 2007. The plaintiff has not filed a reply to the defendants' response, nor has it filed a response to the defendants' motion to dismiss; therefore, the court will consider these issues based on the pleadings filed to date.

## II. ANALYSIS

### A. The Defendants' Motion To Compel Arbitration, Additional Motion To Dismiss, and Alternative Motion in Limine (DE 74, 83)

#### 1. Based on Kentucky's Statute of Limitations, Arbitration Is Unnecessary and Inappropriate

Under Kentucky law, any action involving an injury to the rights of a plaintiff which does not arise from contract and which is not otherwise enumerated by statute must be filed within a five-year statute of limitations. Ky. Rev. Stat. § 413.120(7); *see also Norton Coal Corp. v. Austin*, 508 S.W.2d 584, 585-86 (Ky. 1974) (comparing the various subsections of § 413.120 and holding "that the mere fact that damages are related to contract does not preclude application of" this statute of limitations). Neither party alleges that KCH's present unfair-competition claim arises from the Agreement itself, or any other contract, nor do they claim that the unfair-competition claim is otherwise enumerated by statute. Indeed, the unfair-competition claim, which is set forth as Count VI in KCH's Second Amended Complaint, makes no reference to the Agreement, any other contract between KCH

5

and the defendants, or any statute.³ Similarly, although the defendants argue that KCH's current unfair-competition claim is based on actions which were settled pursuant to the Agreement between KCH and the defendants, the defendants do not contend that the unfair-competition claim *itself* arises out of the Agreement, any other contract between KCH and the defendants, or any statute. Therefore, because it is undisputed that KCH's unfair competition claim does not arise from contract and is not otherwise enumerated by statute, Kentucky's five-year statute of limitations applies.

According to the defendants, because KCH's unfair-competition claim refers to Brooks, it is "based at least in part upon ancient history" involving acts or omissions which occurred before the Agreement, and therefore, this claim is subject to the Agreement's arbitration clause. (DE 74-1 at 1.) But the language of

---

³ More specifically, the Second Amended Complaint alleges that the defendants, by "luring KCH employees and managers to Vanaire[,]" committed the tort of "unfair competition under the common law of Kentucky" or any other relevant state in at least four ways. (DE 67-1 at 6.)

First, KCH suggests that "the sheer number of [lured] employees and the depth of KCH-knowledge" obtained from these lured employees suffices to show "improper and unfair competition" by the defendants. *Id.* Second, KCH claims that the defendants were motivated by "malice toward KCH and with intent to injure KCH in its business and/or reputation[,]" which KCH suggests is sufficient to show unfair competition by the defendants. *Id.* Third, KCH claims that by luring its employees, the defendants acted "beyond and outside the ordinary course of business competition and lack[ed] common business integrity[,]" which KCH suggests is sufficient to show unfair competition by the defendants. *Id.* at 7. Fourth, KCH claims that by luring its employees, the defendants engaged in conduct of "such an improper and unfair nature that it would be viewed by a reasonably prudent businessman with a critical and suspicious eye," which KCH suggests is sufficient to show unfair competition by the defendants. *Id.*

KCH's unfair-competition claim itself does not necessarily support the defendants' interpretation. The clause of the unfair-competition claim referring to Brooks states that "Art Brooks, a KCH manager (who has since returned to KCH's employ) . . . witnessed, he believes, Vanaire improperly and unfairly using KCH confidential information . . . to the damage of KCH." (DE 67-1 at 4.) Thus, this claim might be understood to refer only to events which occurred *after* 1995 and *after* Brooks left Vanaire and returned to KCH; indeed, in its response to the defendants' pending motion to compel, KCH concedes that it "does *not* seek to contest, interpret or relitigate – or even address" claims related to the previous suit settled by the Agreement. (DE 75-1 at 3 (emphasis in original).)

At this time, the court will not consider these conflicting characterizations of the plaintiff's complaint at any greater length because, although the Agreement released both KCH and the defendants "from any and all liability . . . which any party may have had . . ., now has *or may have* against another party[,]" that release was also limited to claims based on "any alleged act or omission occurring *before the execution of this Agreement*." (DE 74-3 at 6-7 (emphasis added).) In other words, although the Agreement (and its arbitration provision) continues to bind future claims as well as past and present claims, it was and remains limited to past, present, or future claims based on acts or omissions occurring before its execution in November 1995. But because the plaintiff's current unfair-competition claim falls under the five-year statute of limitations for non-contractual claims set

7

forth by § 413.120(7), it can be arbitrable under the Agreement only if it is untimely under § 413.120(7), rendering arbitration unnecessary. Accordingly, because KCH cannot recover on any arbitrable unfair-competition claim, the court will deny the defendants' motion to stay the proceedings and compel arbitration (DE 74). Insofar as the unfair-competition claim is based on events occurring before the execution of the Agreement, it is barred by § 413.120(7).

### 2. The Defendants' Motion To Dismiss KCH's Unfair Competition Claim Based on Res Judicata (DE 83)

The doctrine of "res judicata, or claim preclusion, has four elements": first, it requires "[a] final decision on the merits in the first action by a court of competent jurisdiction"; second, the second action must "involve[] the same parties, or their privies, as the first"; third, and most relevant to this matter, the second action must "raise[] an issue actually litigated or which should have been litigated in the first action"; and fourth, there must be "[a]n identity of the causes of action." *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) (citing, inter alia, *King v. S. Cent. Bell Tel. & Tel. Co.*, 790 F.2d 524 (6th Cir. 1986)). In their reply, the defendants suggest that because "the facts underlying the [plaintiff's] new [unfair-competition] claim fall within the parameters of an earlier settlement agreement, then the plaintiff[ is] barred by *res judicata* from pursuing it." (DE 83 at 4.) As noted above, the court will construe this as a motion to dismiss KCH's unfair-competition claim on res judicata grounds and will deny that motion. Again, based on the relevant statute of limitations, KCH cannot

8

now allege a viable unfair-competition claim arising from events occurring before or at the time of the Agreement, even if it intended to do so. Therefore, the court will deny the motion to dismiss without addressing this issue at any greater length.

### 3.     The Defendants' Alternative Motion in Limine (DE 83)

With respect to the defendants' specific requests about Brooks's testimony, the court recognizes that "[j]udicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in an earlier proceeding." *Pennycuff v. Fentress County Bd. Of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005) (citing *Warda v. C.I.R.*, 15 F.3d 533, 538 (6th Cir. 1984)). The doctrine of judicial estoppel "'preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.'" *Warda*, 15 F.3d at 538 (quoting *Teledyne Indus. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1217 (6th Cir. 1990)).

In considering whether to apply the doctrine of judicial estoppel, the court considers three factors. First, the current position of the party must be clearly inconsistent with its earlier position. *Pennycuff*, 404 F.3d at 452 (citing *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). Second, the court must consider whether the party successfully persuaded the previous court to accept its earlier position "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that the first or second court was misled.'"

9

*Pennycuff*, 404 F.3d at 452 (quoting *New Hampshire v. Maine*, 532 U.S. at 750). Third, and finally, the court considers "'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Pennycuff*, 404 F.3d at 452 (quoting *New Hampshire v. Maine*, 532 U.S. at 750). The Sixth Circuit places particular emphasis on the second factor, and this court recognizes that "'judicial estoppel governs the dispute only if the first court adopted the position urged by the party, either as a preliminary matter or as a part of a final disposition.'" *Pennycuff*, 404 F.3d at 453 (quoting *Warda*, 15 F.3d at 538).

In the Agreement, both Brooks and KCH agreed to "fully and forever release" each other and Vanaire "from any and all liability on account of any and all claims . . ., whether known or unknown, whether presently discoverable or undiscoverable, whether suspected or claimed, which any party . . . now has or may have . . . based on any alleged act or alleged omission occuring before the execution of this Agreement." (DE 74-3 at 6-7.) Allowing KCH to argue or Brooks to testify in this matter that Vanaire misappropriated trade secrets or confidential information prior to 1995 would both impose an unfair detriment on Vanaire and give KCH an unfair advantage. Moreover, because the court accepted the terms of the Agreement as a settlement of the previous suit, allowing KCH or Brooks to make such claims in this matter would create the impression that the court was misled in the previous suit. Therefore, because the court finds that the potential

10

testimony of Brooks and the potential claims of KCH in this suit must be limited by judicial estoppel to preclude them from raising any alleged act or omission of Vanaire occuring before the execution of the Agreement, the court will grant the defendants' alternative motion in limine (DE 83). Brooks may not testify and KCH may not make any claim about Vanaire's alleged acts or omissions before the Agreement was signed in November 1995.

### B. The Plaintiff's Motion for Leave To File the Restated Second Amended Complaint (DE 86)

The only substantial difference between the plaintiff's Second Amended Complaint (DE 67) and the Restated Second Amended Complaint (DE 86-3) is the removal of Brooks's name from Paragraph 73 in the Restated Second Amended Complaint, which lists several KCH employees who allegedly provided KCH's confidential or proprietary information to Vanaire. *Compare* DE 86-3 at 3-4, 1-8, *with* DE 67-1 at 3-4, 1-8. As the defendants point out, the presently pending motion to file this "Restated Second Amended Complaint" is the latest in a long line of amendments. In general, under Federal Rule of Civil Procedure 15(a), leave to amend is given freely when justice requires, but the decision to grant leave to amend is ultimately left to the court's discretion, and at some point, an extended series of amendments and modifications prejudices the defendants and unduly imposes on the resources of the court. *E.g.*, *Pedreira v. Ky. Baptist Homes for Children, Inc.*, No. 3:00CV-210-S, 2007 WL 316992, at *2 (W.D. Ky. Jan. 29, 2007) (citing, inter alia, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S.

11

321 (1971), and *Gregory v. Mitchell*, 634 F.2d 199 (5th Cir. 1981)). Although this most recent motion to amend was not filed in bad faith, in this case, that point has been reached and exceeded: the motion at issue and the proposed amendment to the complaint obscure, rather than clarify, the remaining issues and the issues discussed above.[4] Accordingly, the court will deny the plaintiff's motion for leave to file the Restated Second Amended Complaint (DE 86).

### C. The Defendants' Motion To Dismiss Two of the Plaintiff's Claims (DE 93, 96)

The defendants have also moved to dismiss the unfair competition claim, which is set forth as Count VI in KCH's Second Amended Complaint, and to dismiss the misappropriation, conversion, and theft claim, which is set forth as Count II of KCH's Amended Complaint.[5] Count I of KCH's Amended Complaint alleges that the defendants "unlawfully misappropriated KCH's trade secrets,

---

[4] According to a late reply filed by the plaintiff, the Restated Second Amended Complaint was filed "as a means of properly focusing this case" and Brooks's relation to it, by clarifying that this case "has nothing to do with the 1995 arbitration clause." (DE 99-1 at 6.)

No reason to question KCH's intent exists, but the simple deletion of Brooks's name in the Restated Second Amended Complaint does not, taken by itself, clarify the relation of the plaintiff's current claims to the previous litigation or the Agreement, nor does it satisfy the defendants' objection to the potential scope of Brooks's testimony, discussed above.

[5] The Second Amended Complaint "repeats and realleges paragraphs 1 through 68 of [the] Amended Complaint," except for the defamation claim, but it does not specifically reproduce either these paragraphs or these claims. (DE 67-1 at 1.) Therefore, all specific references to KCH's claims other than the unfair-competition claim, set forth as Count VI in the Second Amended Complaint, will be based upon the Amended Complaint.

12

including confidential and proprietary Software, in violation of the Kentucky Uniform Trade Secrets Act, KRS § 365.880, *et seq.*" ("KUTSA"). (DE 9 at 10.)

With few exceptions, none of which are relevant here, KUTSA "replaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Ky. Rev. Stat. § 365.892(1); *see also Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001) (finding that "KUTSA replaces other law relating to the misappropriation of trade secrets, regardless of whether . . . the information at issue qualifies as a trade secret"). KUTSA does not necessarily preempt all causes of action that relate to trade secrets; rather, if the misappropriation of trade secrets forms only one element of a claim, then KUTSA may not preempt such a claim. *Auto Channel*, 144 F. Supp. 2d at 789 (W.D. Ky. 2001) *see also Greif v. MacDonald*, No. 3:06-CV-312-H, 2007 WL 679040, at *1 (W.D. Ky. March 1, 2007) (citing *Auto Channel*, and finding that KUTSA preempts claims only insofar as they are based on the misappropriation of trade secrets). Therefore, to determine whether KCH's separate misappropriation and unfair-competition claims are preempted by its KUTSA claim, this court must first examine each of these non-KUTSA claims "and determine whether the claim seeks a remedy for the misappropriation of trade secrets." *Auto Channel*, 144 F. Supp. 2d at 789.

Count II of the Amended Complaint alleges that the defendants "unlawfully misappropriated and converted KCH's trade secrets, including confidential and

proprietary software" which the defendants allegedly continue to use. (DE 9 at 11-12.) In other words, Count II rests entirely on this claim of misappropriated trade secrets – indeed, it almost literally reiterates the exact phrase used in Count I, excerpted above – and thus, it is completely replaced and preempted by KUTSA.[6] Therefore, the court will grant the defendants' motion to dismiss Count II.

Count VI of the Second Amended Complaint is a different matter: no such literal connection exists between the four specific allegations presented in KCH's unfair-competition claim and KCH's KUTSA claim. Nevertheless, the defendants suggest that the unfair-competition claim presented in Count VI is really "nothing more than a claim for an alleged use, or misuse, of trade information or trade secrets," and they conclude that the court should find it is also preempted by KUTSA because it rests on the same essential facts and allegations as the misappropriation claim. (DE 93 at 7.) It is true that "[o]ther courts have dismissed

---

[6] According to the plaintiff, the misappropriation, conversion, and theft claim set forth in Count II of the Amended Complaint may also be based on the defendants' alleged misappropriation of the plaintiff's training efforts. *See* DE 100 at 10 (citing *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 239 (1918), and arguing that such "'reaping where it has not sown' is the essence of the common law tort of misappropriation").

Although KCH's unfair-competition claim does refer to these training efforts, as discussed in greater detail below, Count II of the Amended Complaint contains no such reference. Rather, Count II is based entirely on the defendants' alleged unlawful misappropriation of trade secrets. (DE 9 at 11-12.) Because the plaintiff's current characterization of its misappropriation, conversion, and theft claim is not supported by the actual text of Count II, and because the court will not permit the plaintiff to further amend its complaint to support its current characterization of this claim, the court will not consider these issues at any greater length.

14

claims of unfair competition because they were based on misappropriation of a trade secret"; however, where claims of unfair competition are "based upon a 'further factual basis' that has nothing to do with misappropriation of a trade secret," other courts have also found that such claims are "not preempted" under KUTSA. *Greif*, 2007 WL 679040, at *2 (quoting *Auto Channel*, 144 F. Supp. 2d at 789, and citing *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005), in which the court preempted unjust enrichment claims arising from the "same nucleus of facts as the misappropriation of trade secrets claim").

To the extent that KCH's unfair-competition claim is based upon the alleged misappropration of a trade secret, it is preempted by KUTSA, and therefore the court will grant in part the defendants' motion to dismiss Count VI. At least part of Count VI, however, is based on the allegation that by luring Brooks and others away from KCH, the defendants gained not only "specialized nonproprietary and specialized non-trade secret information" but also "effectively transferr[ed] to KCH the ongoing upfront costs and extensive time period of educating . . . said employees" and gained "an ongoing evolving understanding of the inner workings at KCH, including business and marketing strategies, client relationships and other information." (DE 67-1 at 4.) These allegations do not involve the misappropriation of a trade secret, and therefore, they are not preempted by KUTSA.

Nevertheless, the defendants argue that Count VI should be dismissed in its

15

entirety because these allegations, and all other allegations in Count VI which may not be preempted by KUTSA, are based only on conclusory allegations or KCH's unsupported "information and belief." Thus, the defendants conclude, Count VI should be dismissed because "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal citations omitted). But the allegations specifically excerpted above are based on more than conclusory allegations or the simple "information and belief" available to any plaintiff: according to KCH, they are based on the experiences of five named former employees, including Brooks. Therefore, the court will not dismiss Count VI of the Second Amended Complaint in its entirety at this time. Accordingly,

**IT IS ORDERED** that the defendants' motion to dismiss Count VI of KCH's Second Amended Complaint (DE 93, 96) is **GRANTED IN PART** and **DENIED IN PART**. To the extent that KCH's unfair-competition claim is based upon the alleged misappropration of a trade secret, it is dismissed. To the extent that KCH's unfair-competition claim is not based upon the alleged misappropriation of a trade secret, and to the extent that this claim is supported by more than labels, conclusions, and a formulaic recitation of the elements of a cause of action, the defendants' motion to dismiss this claim is denied.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss Count II of KCH's Amended Complaint (DE 93, 96) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to stay the proceedings and compel arbitration (DE 74) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' additional motion to dismiss KCH's unfair competition claim on the grounds of res judicata is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' alternative motion in limine is **GRANTED**. Brooks may not testify and KCH may not make any claim about Vanaire's alleged acts or omissions before the Agreement was signed in November 1995.

Signed on August 31, 2007

**Jennifer B. Coffman, Judge**
**United States District Court**

17