## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-777-C**

**KCH SERVICES, INC.,**     **PLAINTIFF,**

**V.**     **MEMORANDUM OPINION AND ORDER**

**VANAIRE, INC., ET AL.,**     **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the defendants' motion for partial summary judgment (DE 113). The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**I. Factual Background**

The following is a summary of the relevant facts as viewed in the light most favorable to the non-movant. The plaintiff, KCH Services, Inc. ("KCH"), and the defendants, Vanaire, Inc. ("Vanaire") and its president Guillermo Vanegas, are competitors in the ventilation systems market for the metal plating industry. Each company designs, produces, and installs "scrubber systems," which exhaust harmful fumes away from work environments through the use of many cylindrical components. KCH alleges that the defendants, through KCH's former employee, Scott Freeman, misappropriated certain computer software programs that were confidential and proprietary.

The ductwork for the scrubber systems makes twists and turns that are created using specially-cut curvilinear parts, which must be laid out before they are cut. KCH

developed software to automate the "layout" of these curvilinear components (the "KCH Software"). KCH's programmer, Doug Holt, wrote twelve computer software programs in the early 1990s. The codes in the programs create or "lay out" patterns that are used to create the parts for the scrubber systems.

KCH hired Scott Freeman in 1984, at which time KCH required all employees to sign separate employment and security agreements. As the agreements were updated over the years it was KCH's policy to have its employees execute the newest versions. In 1996, the employment and security agreements were merged into the "Employment Agreement." Although KCH states that Freeman would have, or at least should have, signed the Employment Agreement, a signed version for Freeman is not available. Freeman worked at KCH as a draftsman and eventually as head of engineering; he never performed layout duties at KCH. On September 11, 2000, Scott Freeman left KCH, he was self-employed for about four months, and then on January 4, 2001, he joined Vanaire.

The KCH Software was not stored on Freeman's KCH computer, which is demonstrated by the back-up disks from that computer which Doug Holt used to give program files to Freeman when Freeman's personal computer crashed during the time he was self-employed. The plaintiff states that Freeman's personal computer presently has at least nine of the twelve proprietary KCH Software programs. Within six months of starting work at Vanaire, Freeman electronically transferred information, including the KCH Software, from his personal computer to Vanaire. The defendants state that

Freeman apparently uploaded those files onto Vanaire's layout computer after he was hired.[1]  Of the about 200 software programs that Freeman transferred to Vanaire, twelve programs are considered proprietary by KCH.  In October 2005, when Vanaire learned that KCH was claiming the programs in question were trade secrets, Vanaire deleted the software from its computers.  The defendants are now moving for partial summary judgment on the "trade secrets" claim.

**II. Standard of Review**

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Id*. at 324-25.  To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e).  The

---

[1] In their initial disclosures the defendants state: "Freeman was eventually hired by Vanaire in late January of 2001.  At that time, Vanaire used third-party software packages.  This software performs some of the same functions as the 'lisp' routines Holt gave Freeman.  The third-party software created a problem, however, because unless a customer has the same software, the customer could not properly view Vanaire's drawings.  Thus, Freeman suggested to Art Brooks, acting President of Vanaire at the time, that the third-party software be removed and the 'lisp' routines be installed." Initial disclosures of defendants, at 4-5, attached as Exhibit K to DE 121.

court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III. Legal Analysis**

**A. Misappropriation of Trade Secrets**[2]

KCH alleges that the defendants unlawfully misappropriated KCH's trade secrets, specifically confidential and proprietary software, in violation of the Kentucky Uniform Trade Secrets Act. KRS § 365.880 et seq. ("KUTSA").[3] To demonstrate a violation of the KUTSA, KCH must show that (1) it had a trade secret, and (2) the defendants misappropriated the trade secret. *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 788 (W.D. Ky. 2001); *see also Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir.

---

[2] The parties' briefs are unclear regarding which law they think should govern the claim for misappropriation of trade secrets. The defendants state that Kentucky law governs in general, but then argue that North Carolina law should be used to interpret certain aspects of the case, including the court's interpretation of the Employment Agreement. The plaintiff states that it agrees with the defendants that North Carolina law governs the dispute, including the claim which was brought under the Kentucky Uniform Trade Secrets Act. The following analysis of the KUTSA claim is based on Kentucky law; however, the outcome would be the same under North Carolina law. Although North Carolina has not officially adopted the Uniform Trade Secret Act as Kentucky has, its Trade Secrets Protection Act is substantially similar, as discussed below. The court will direct the parties, in a later order setting the new trial date, to brief the topic of what law governs the case, should it become necessary to decide that issue.

[3] "Because KUTSA is a uniform law . . . decisions in other jurisdictions provide guidance for its application and construction." *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 788 (W.D. Ky. 2001) (citing KRS § 365.894).

4

1998). "In any analysis of this sort, no one factor is determinative. Every circumstance must be considered on its merits." *Auto Channel, Inc.*, 144 F. Supp. 2d at 795. The plaintiff having raised genuine issues of material fact with respect to whether the software constituted a trade secret, whether the software was reasonably kept secret, and whether the software was misappropriated, the court will deny the defendants' motion for partial summary judgment.

1. Whether the Software was a Trade Secret

To be considered a trade secret under Kentucky law, the software at issue must (1) have independent economic value, (2) not be generally known or readily ascertainable by proper means, and (3) be the subject of reasonable efforts to maintain its secrecy. *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 890 (E.D. Ky. 2003); *Auto Channel, Inc.*, 144 F. Supp. 2d at 788.[4] "Whether a particular type of information constitutes a trade secret is a question of fact." *Camp Creek Hospitality Inns, Inc.*, 139 F.3d at 1410; *see also Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003); *MicroStrategy Inc. v. Li*, 601 S.E.2d 580, 589 (Va. 2004) (citing cases). The plaintiff has provided evidence

---

[4] The Kentucky Uniform Trade Secrets Act defines a trade secret as:
[I]nformation, including a formula, pattern, compilation, program, data, device, method, technique, or process, that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
KRS § 365.880 (4)(a)-(b).

5

from which a reasonable jury could find that the information in this case meets Kentucky's statutory definition of a trade secret.[5]

With regard to the value of the trade secret, the employee who developed the KCH Software, Doug Holt, spent an estimated 7600 hours creating it, according to the plaintiff. Part of the added value of the software is that it automates the time-consuming layout process. The software took many years to create and implement at KCH, including three years investigating the capabilities of various routers. The president of KCH testified that a competitor in the industry, Mapco, asked to buy the KCH Software, but KCH refused to sell it.

The defendants argue that equivalents to the allegedly stolen information are readily available in the market. The plaintiffs dispute that the layout software for sheet metal parts available from Design2Fab and SMLayout are "equivalent" to the layout/router control software internally developed at KCH. *See* Declaration of Kenneth C. Hankinson, at 1-2, attached as Exhibit D to DE 121 ("Hankinson Declaration"). According to a signed declaration provided by the plaintiff, the pollution control systems in the metal finishing industry must use non-corroding parts such as PVC plastic, and sheet metal components will not work. *Id.* at 1. Specifically, the layout software from SMLayout and Design2Fab includes design aspects that are both

---

[5] For something to be a trade secret under North Carolina law, (1) it must have commercial value from not being known or readily ascertainable, and (2) reasonable efforts must be made to keep it secret. *Wilmington Star-News v. New Hanover Regional Medical Center, Inc.*, 480 S.E.2d 53, 56 (N.C. Ct. App. 1997). The court finds that the outcome of this motion would be the same under North Carolina law.

a hindrance and inapplicable to PVC cutting. *Id.* at 2. Additionally, the KCH Software lays out a near perfect circle, while SMLayout cuts a hole with an angled circumference. *Id.* at 2. KCH needs the ability to upgrade its software as needed and would not want to relinquish control of such upgrades to a different company. *Id.* at 2. The plaintiff also outlines how AutoCAD is inferior to the KCH Software by discussing the amount of time and number of keystrokes involved in using each program. *Id.* at 3.

Additionally, the defendants argue that the plaintiff did not take adequate steps to protect the software that KCH claims was confidential, and that it thus was not a protected trade secret. Whether KCH's efforts to keep the software secret were reasonable under the circumstances is a factual question. *Niemi v. NHK Spring Co., Ltd.*, No. 07-3536, 2008 WL 4273123, at *8 (6th Cir. Sept. 19, 2008) ("[E]xcept where the evidentiary showing of reasonable efforts could not conceivably support a judgment in favor of the plaintiff, the reasonableness of the efforts is a question for the trier of fact."); *see also Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 724-25 (7th Cir. 2003). The plaintiff claims in deposition testimony that the KCH employees who had contact with the layout software knew that KCH considered the KCH Software confidential and proprietary. There were only two people at any time at KCH who had daily access to the KCH Software – the layout operator and Doug Holt – and each of them was aware of the twelve specific modules that comprised the KCH Software. The KCH Software was stored only on the layout

7

computers and on Doug Holt's computer, which, according to the plaintiff, were password-protected. According to deposition testimony, KCH employees were told that the software was valuable. Additionally, KCH had its employees sign confidentiality agreements. KCH further states that it never disclosed the KCH Software to any third party. Thus, factual disputes exist, including but not limited to those discussed above, regarding whether the KCH Software was a protected trade secret.

2. Whether the Defendants Misappropriated the Trade Secret

The defendants misappropriated a trade secret if they used it without proper consent, if the trade secret was disclosed improperly, or if it was acquired through improper means. KRS § 365.880; *In re Dippin' Dots Patent Litigation*, 249 F. Supp. 2d 1346, 1375 (N.D. Ga. 2003) (applying Kentucky law).[6] The plaintiff must have

---

[6] Under Kentucky law,
(1) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; [and]
(2) "Misappropriation" means:
    (A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
    (B) Disclosure or use of a trade secret of another without express or implied consent by a person who:
    1. Used improper means to acquire knowledge of the trade secret; or
    2. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
        a. Derived from or through a person who had utilized improper means to acquire it;
        b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

evidence from which a reasonable jury could decide that the defendants obtained the software through improper means or used it without proper consent. *See Auto Channel, Inc.,* 144 F. Supp. 2d at 796; *MicroStrategy Inc. v. Li*, 601 S.E.2d at 589 ("Such a determination is uniquely factual in nature because it ordinarily involves extensive circumstantial evidence that must be evaluated against the direct evidence often presented by defendants in a trade secrets case.") (citing *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 561 (4th Cir. 1990)). The plaintiff has presented sufficient evidence to raise a genuine factual dispute as to whether the defendants misappropriated the plaintiff's trade secrets, including but not limited to the following evidence.[7]

According to deposition testimony, KCH suspected, based on various pieces of information, that Vanaire had obtained the KCH Software and that Vanaire was using

---

        c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
3. Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

KRS § 365.880 (1)-(2).

[7] The facts as presented by the plaintiff also raise a genuine dispute regarding misappropriation under North Carolina law. The North Carolina Trade Secrets Protection Act states, "'Misappropriation' means acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152 (2007). The defendants do not allege that they obtained the software through independent development or reverse engineering, but they do argue that Freeman was free to disclose the software as discussed below in section B.

9

the software to run its router.  Mr. Vanegas, at Vanaire, denied that they were using the KCH Software.  However, Vanaire subsequently deleted the KCH Software from its computers.  Vanaire apparently obtained the KCH Software from Freeman, who was not supposed to have it and who was under a duty not to disclose it at the time he transferred it to Vanaire, according to the plaintiff.  Thus, factual disputes exist regarding the circumstances surrounding Vanaire's acquisition and use of the KCH Software, that preclude summary judgment on the claim of misappropriation.

**B.  Scott Freeman's Employment Agreement**

The parties to this action apparently agree that Freeman signed the Employment Agreement as adopted by KCH, and that it controls his relations with KCH. The defendants argue that the KCH Software was subject to the confidentiality provisions of the Employment Agreement only for a period of ten months following the one-year anniversary of an employee's resignation or termination (the "sunset provision").  They allege that the sunset provision negates the claim that the KCH Software is a trade secret and that the software was misappropriated.  The defendants argue that Scott Freeman was free to disclose the KCH Software to Vanaire and that Vanaire did not obtain or use the software through improper means.

The plaintiff argues that the Employment Agreement treats confidential information differently from tangible property.  According to the plaintiff, only the "information" listed in the Agreement is subject to the sunset provision, while any company "property" must be returned to the employer upon termination of the

10

agreement. The plaintiff claims that the KCH Software as stored on a disc or a hard drive is tangible property. The defendants argue that because software is "information," Freeman was not under a duty to keep it secret after the expiration of the sunset provision. The distinction is not determinative, however, because a genuine factual dispute exists regarding when Freeman disclosed the KCH Software to Vanaire and when Vanaire then used that Software.

The defendants argue that by the time Vanaire was equipped to use the software that Freeman brought to Vaniare, the sunset provision of the confidentiality clause had expired. KCH uses the software in conjunction with a router, and Vanaire did not install a router until 2003, which was more than two years after Freeman left KCH. The defendants argue that Vanaire could not have used the software prior to having a functioning router, which was after the twenty-two-month period required by the Employment Agreement. KCH first responds that Freeman breached the Employment Agreement by disclosing the software to Vanaire at any time because he was required to return all property to KCH upon the termination of his employment. KCH alternatively argues that even if the sunset provision applied to the proprietary software, Freeman disclosed the information to Vanaire prior to the expiration of the sunset provision. The plaintiff states that the KCH Software can function separately from the router by creating a pattern that can be used for manual cutting when the router is not working, or when a curvilinear part needs to be cut out of town. Thus, Vanaire could have used the software as soon as Freeman transferred the files, which

11

was less than a year after leaving KCH. There is a genuine dispute as to whether Freeman was free to disclose the KCH Software – that is, as to whether the sunset clause had expired before Vanaire used the files.

Therefore, genuine issues of material fact exist regarding the claim for misappropriation of trade secrets, and the court will not grant partial summary judgment for the defendants.

**IV. Conclusion**

**IT IS ORDERED** that the defendants' motion for partial summary judgment (DE 113) is **DENIED**.

Signed on  September 23, 2008

**Jennifer B. Coffman, Judge**
**United States District Court**