UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 05-777-C

KCH SERVICES, INC., PLAINTIFF,

V. MEMORANDUM OPINION AND ORDER

VANAIRE, INC., ET AL., DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the plaintiff's motions to exclude the testimony of Andrew Cobb (R. 245), Thomas Cooper (R. 246), and Stephen Bowen (R. 247); reference to commercially available software such as SMLayout and Design2Fab (R. 249); testimony about money damages by Thomas Cooper (R. 253); and evidence of the defendants' alleged use of AutoCAD to perform layout functions (R. 255). Also pending are the plaintiff's motion to allow it to present unjust enrichment damages based on presently and recently available information (R. 257); and the defendants' motions to exclude testimony based on late expert disclosures and implied amendments to the plaintiff's complaint (R. 260); testimony or damages calculations that treat router usage as proprietary to the plaintiff (R. 262); and testimony of Joseph Gemini (R. 267). The court will address each in turn.

A. Legal Standard

Federal Rule of Evidence 702 governs the use of expert testimony. *See also Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharm.,*

*Inc.*, 509 U.S. 579 (1993).

> [A] proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008).

In evaluating the reliability of expert testimony, the court may examine "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance of the relevant scientific community . . . ." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94). However, "[t]he test of reliability is 'flexible,' and the *Daubert* factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case." *In re Scrap Metal*, 527 F.3d at 529 (quoting *Kuhmo Tire*, 526 U.S. at 150). The court's function as "gatekeeper" to exclude unreliable expert testimony applies to all expert testimony, not just testimony based on "scientific" knowledge. *See* Fed. R. Evid. 702 advisory committee's notes, 2000 amend.; *Kuhmo Tire*, 526 U.S. at 147.

As a preliminary matter, the testimony of all experts who will be allowed to testify in this case will be limited to opinions within their respective areas of expertise, and will include only those which they are qualified to provide.

B. <u>Joseph Gemini</u>

The plaintiff seeks to offer Gemini's expert testimony on damages calculations. The court will deny the defendant's motion to exclude his testimony (R. 267). First, Gemini is qualified due to his knowledge, skill, training, expertise, and education. He holds Bachelor's and Master's degrees in his field, has worked as a certified public accountant for approximately twenty-three (23) years, and is a member of the American Institute of Certified Public Accountants. He has provided depositions and trial testimony in numerous cases, including those in federal courts, and has consulted in the areas of trade secrets and business valuations. He has testified in at least seventy-five (75) legal proceedings involving calculations of damages.

Second, Gemini's testimony is relevant because it will assist the trier of fact in understanding the evidence and determining facts in issue. Damages in a trade secret can be difficult to compute. *See Avery Dennisson Corp. v. Four Pillars Enter. Co.*, 45 Fed. Appx. 479, 485 (6th Cir. 2002). The defendants argue that Gemini's testimony would not be helpful because he would simply use numbers provided by Kenneth Hankinson, president of the plaintiff corporation and one of its witnesses, associated with the value of a trade secret and would apply nothing more than simple addition, subtraction, division, and multiplication in providing testimony on damages. The defendants submit that the jury can grasp such basic mathematics without the use of an expert. However, the value of an accountant such as Gemini is not that he can perform simple mathematical calculations, but rather that he is able, unlike a lay

person, to know which numbers to add, subtract, divide, and multiply in calculating damages from alleged trade secret misappropriation. In offering his opinion, Gemini provides the jury with an application of an accepted method to calculate the ways proprietary technology provides the user of the technology with an economic advantage. In this case, these ways might include reduction in production costs that may result from increased manufacturing speeds, reduction in the cost of labor used to manufacture the product, premium pricing of the user's product that the user would otherwise be unable to charge, and savings on router research, software development, productivity, time, training, and experience. Gemini also provides an application of methods to calculate direct costs, variable costs and expenses, fixed costs and expenses, average and median profits per job performed, incremental profit, gross profit margins, actual gross margins, and adjustments for inflation. The jury will benefit from an expert's explanation of these calculations.

Third, Gemini's expected testimony is reliable. He relies on known, albeit disputed, figures to which Hankinson will testify at trial, holds significant professional qualifications, and uses methods in accordance with an industry standard, as discussed below. The defendants dispute the figures provided by Hankinson. However, a court will "generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *In re Scrap Metal*, 527 F.3d at 530. Under Federal Rule of Evidence 611, the court can require Hankinson to testify before Gemini does so. *See also* Fed. R. Evid. 703. The defendant will have

an opportunity to cross-examine Hankinson on matters raised during direct examination, which may include dollar values associated with alleged trade secrets. "[W]eakness in the factual basis of an expert witness'[s] opinion," such as the numbers used by the plaintiff in this case to compute damages, "bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). While the defendants attack Gemini's use of Hankinson's figures in formulating an opinion on damages, Gemini used data that was available. *See Digital Filing Sys., LLC v. Aditya Int'l*, 323 Fed. Appx. 407, 419 (6th Cir. 2009); *Bell v. Pro Arts, Inc.*, 511 F.2d 451, 453 (6th Cir. 1975); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996). The American Institute of Certified Public Accountants has set forth professional standards for litigation services for accountants or economic experts in obtaining the data used to support their expert opinions, and these standards permit the expert to rely on "facts or assumptions" provided by the party seeking to offer the expert's opinion. *See Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 443 (D. Del. 2007) (quoting Litigation Services and Applicable Professional Standards, AICPA Special Report 03-1, 2003 New York, NY). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530 (quoting Fed. R. Evid. 702 advisory committee's note, 2000 amend.). Due to his qualifications and the relevancy and reliability of his expected testimony, Gemini will be allowed to testify.

Federal Rule of Civil Procedure 26(a)(2)(D) states, "The parties must supplement . . . disclosures when required under Rule 26(e)." Rule 26(e) states,

> (1) . . . A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . . (2) . . . For an expert whose report must be disclosed . . . , the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Gemini acknowledged in his initial report that it may be necessary to provide supplemental reports, and the plaintiff had a duty to supplement his reports once new evidence was discovered that the plaintiff intended to use in calculating damages. Accordingly, the plaintiff filed Gemini's supplemental reports. These reports were based on newly discovered, significant evidence that followed discovery disputes. While elements of damages were added based on new information, Gemini did not fundamentally change his method of calculating damages from one report to the next. After his initial report, Gemini's qualifications and the nature of his expected testimony remained largely the same. By the plaintiff's fulfilling of its duty to supplement Gemini's reports under Rule 26(e), Gemini did not become a "moving target" for purposes of a *Daubert* motion by the defendants. *See Pride v. BIC Corp.*, 218 F.3d 566, 579 (citing *In Re TMI Litigation*, 922 F. Supp. 997, 1005 (M.D. Pa. 1996)); *see*

*also Outley v. New York*, 837 F.2d 587, 590-91 (2d Cir. 1988); *Citizens Bank v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994). Separately from their *Daubert* motion, the defendants move to exclude Gemini's testimony based on late expert disclosures and what they deem implied amendments to the plaintiff's complaint (R. 260). For the reasons stated above, the court will deny the defendants' motion in regard to late expert disclosures. In regard to what they deem implied complaint amendments, the defendants argue that since the specific allegations concerning a preventive maintenance program and the F-16-related contract were not included by the plaintiff in its latest amended complaint, evidence concerning these allegations should be excluded. However, these allegations, all of which were included in answers to the defendants' discovery requests and presented to the defendants before the deadline for dispositive motions, are part of the plaintiff's claim of unfair competition. The allegedly tortious conduct involving the preventive maintenance programs and F-16-related contract occurred, in large part, by virtue of employees who worked for the plaintiff and then went to work for the defendants, a significant aspect of the plaintiff's claim of unfair competition. Therefore, the court will deny the defendants' motion in limine (R. 260) in regard to implied complaint amendments.

The plaintiff moves separately to allow it to present unjust enrichment damages based on presently and recently available information (R. 257). Because unjust enrichment damages are expressly authorized by statute, *see* KY. REV. STAT. ANN. 365.884 (2010), and the plaintiff has a duty to supplement its expert's initial report

as required by the Federal Rules of Civil Procedure, the court will grant the plaintiff's motion. In regard to damages calculations, the defendants move to exclude trial testimony that treats router usage as proprietary to the plaintiff (R. 262). The court will deny the defendants' motion because the capabilities and value to the defendants of the alleged trade secrets in question are questions of fact for the jury.

    C. Thomas Cooper

For the same reasons that the court will deny the defendants' motion to exclude Gemini's testimony, it will also deny the plaintiff's motion to exclude the testimony of Thomas Cooper (R. 246). Cooper is qualified due to his knowledge, skill, training, expertise, and education. He holds a Bachelor's degree in his field, has worked as a certified public accountant for over forty (40) years, and is a member of the American Institute of Certified Public Accountants. He has provided depositions and trial testimony in numerous cases, including expert deposition testimony in a federal court. He will be permitted to rebut of Joseph Gemini's testimony, provided that his opinions are limited to those which he is qualified to formulate and provide to the jury. For example, he may testify concerning calculations of damages from the ways allegedly proprietary technology provides the user of the technology with an economic advantage. However, his methods need not mirror Gemini's exactly. "When a trial court rules . . . that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." Fed. R. Evid. 702 advisory committee's note, 2000 amend.. The plaintiff moves to preclude the

defendants from offering testimony relating to money damages through Cooper (R. 253). The plaintiff's motion will be denied, and Cooper will be allowed to rebut Gemini's testimony concerning damages, in accordance with his report.

### D. Andrew Cobb

The defendants seek to offer testimony of Andrew Cobb to explain software that was on the defendants' computers during the time period in question. The court will deny the plaintiff's motion to exclude the testimony of Andrew Cobb (R. 245) in that Cobb will be conditionally allowed to testify. First, Cobb is qualified due to his knowledge, skill, training, expertise, and education. He holds Bachelor's and Master's degrees in Electrical Engineering and a Doctorate in Philosophy in Computer Science and Engineering. He is currently employed as a professor in his field of expertise at a major university. He has worked with computer technology for approximately fifteen (15) years and is a member of professional organizations within his field. He has published multiple works in his general field of expertise and has provided expert analysis and testimony in numerous cases.

Second, Cobb's expected testimony is relevant. His report states, "The version of SMLayout currently used by Vanaire remains unchanged since the early 1990's. More specifically, the LISP files are the same in both the 1991 and 1999 versions. This was verified using digital signatures, a widely accepted method for verifying that two files have the same content." If allowed, this testimony will assist the jury in understanding how it is possible that the defendants had at their disposal commercially

9

available software that could have been used to perform functions similar to those performed by the plaintiff's proprietary software, making it less likely that the defendants would have needed to possess and use the plaintiff's proprietary software during the time period in question.

While Cobb is qualified to testify, and his expected testimony is relevant, it is not reliable at this juncture. According to the plaintiff, the defendants have not yet produced any evidence that commercially available software such as SMLayout was on the defendants' computers and in use by the defendants. That is, the defendants did not provide copies of the software, search terms with which data was extracted, or screen shots that would show that the defendants were in possession of SMLayout and other commercially available software. An attachment to Cobb's report, "Media Imaging Protocol," describes a procedure by which imaging can be performed, but does not include a verification that the procedure described was, in fact, the method by which imaging occurred in this case. The defendants argue that the commercially available software is protected by copyright, and therefore not discoverable by the plaintiffs from the defendants. Yet the defendants may use the stipulated protective order of June 30, 2006, or other device with which to facilitate discovery of any evidence of their possession of commercially available software that may not already be obtained under the doctrine of "fair use" for purposes of litigation. *See* R. 39; *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 277 (6th Cir. 2009). The court will require the defendants to deliver to the plaintiff all facts and data upon

which Cobb's opinions rest, *see* Fed. R. Evid. 705, and will require a preliminary hearing to determine the admissibility of Cobb's testimony at trial. *See* Fed. R. Evid. 104.

### E. Stephen Bowen

The defendants seek to offer Stephen Bowen's testimony to show that the commercially available software in the possession of the defendants during the period in question is similar to the plaintiff's proprietary software. The court will deny the plaintiff's motion to exclude the testimony of Stephen Bowen (R. 247) in that Bowen will be conditionally allowed to testify.

First, Bowen may be qualified due to his knowledge, skill, training, expertise, and education. However, significant details of an expert's professional background are absent from his report. Though by no means dispositive in considering whether he is qualified, *see generally Kuhmo Tire*, 526 U.S. 137, he does not hold a Bachelor's degree, has not published in his field, and has never previously been deemed qualified and testified in a case. However, the issue is not "qualifications . . . in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). His report does include information concerning his practical experience with software, which may provide a sufficient foundation for his expert testimony.

Second, whether or not he is qualified, Bowen's expected testimony is relevant. If allowed, it will assist the jury in understanding what the defendants claim are

11

similarities in the plaintiff's proprietary software and commercially available software, such that the defendant would not have needed to use the plaintiff's software during the time period at issue.  Third, however, Bowen's expected testimony is not yet reliable.  The facts and data upon which his opinions rest were not provided with his report, nor are his qualifications known to the court strong indicia of reliability of his opinions.  Following submission by the defendants to the plaintiff of all facts and data upon which Bowen's opinions in this case are based, *see* Fed. R. Evid. 705, the court will require a preliminary hearing to determine the admissibility of his testimony at trial.  *See* Fed. R. Evid. 104.

    F.  Commercially available software

The plaintiff moves to exclude evidence of commercially available software such as SMLayout, Design2Fab, and AutoCAD because the defendants have not produced evidence of ownership or use of these programs for the time period in question (R. 249, 255).  The plaintiff requested evidence of the programs, and the defendant produced 1) an invoice for purchase of SMLayout dated "2006," which is outside the time period in question; 2) a user manual for SMLayout; 3) statements from the defendant Guillermo Vanegas, Sr. in a deposition that SMLayout "would have" and "might have" been used for work by the defendant Vanaire, Inc. during the period in question; 4) an opinion from Andrew Cobb, without accompanying, foundational facts or data, in his expert report that SMLayout has been on the defendants' computers since the early 1990's; and 5) informative literature on the

12

software Design2Fab. The evidentiary value of these items is largely circumstantial in showing that the defendants possessed and used such commercially available software during the time period in question. Just as the court will order the defendants to deliver to the plaintiff all facts and data upon which Cobb and Bowen's opinions rest, it will order the defendants to deliver to the plaintiff evidence of ownership or use of the commercially available software, which may include but is not limited to purchase invoices that reflect ownership during the period in question, screen shots, original disks, licensing agreements, registration numbers, serial numbers, and authorization codes associated with the defendants' copies of commercially available software. This production may fall under the stipulated protective order of June 30, 2006. *See* R. 39. Since the defendants will be given another opportunity to provide such evidence in advance of trial, the court will deny without prejudice the plaintiff's motions in limine to exclude evidence of the commercially available software (R. 249, 255), with leave to renew these two motions at a later date. Accordingly,

**IT IS ORDERED** that the plaintiff's motions to exclude the testimony of Thomas Cooper (R. 246) and testimony concerning money damages by Cooper (R. 253) are **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motions to exclude the testimony of Andrew Cobb (R. 245), Stephen Bowen (R. 247), reference to commercially available software such as SMLayout and Design2Fab (R. 249), and evidence or

13

testimony related to its alleged use of AutoCAD to perform layout function (R. 255) are **DENIED** without prejudice, with leave to renew at a later date.

**IT IS FURTHER ORDERED** that the plaintiff's motion to allow it to present unjust enrichment damages based on presently and recently available information (R. 257) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motions to exclude testimony based on late expert disclosures and implied amendments to the plaintiff's complaint (R. 260), testimony or damages calculations that treat router usage as proprietary to the plaintiff (R. 262), and the testimony of Joseph Gemini (R. 267) are **DENIED**.

**IT IS FURTHER ORDERED** that no later than ten (10) days from the date of entry of this order, the defendants shall provide to the plaintiff all facts and data upon which Andrew Cobb and Stephen Bowen's opinions in this case are based.

**IT IS FURTHER ORDERED** that no later than ten (10) days from the date of entry of this order, the defendants shall provide to the plaintiff evidence of ownership or use of commercially available software of which the defendants intend to introduce evidence at trial.

**IT IS FURTHER ORDERED** that the court will require preliminary hearings under Federal Rule of Evidence 104(a), outside the hearing of the jury, to determine the admissibility of Andrew Cobb's and Stephen Bowen's expected testimony. The hearings will occur on the days preceding the expected days for testimony of Cobb and Bowen, respectively.

**IT IS FURTHER ORDERED** that no later than ten (10) days from the date of entry of this order, the parties shall brief the court on whether Kentucky or North Carolina substantive law applies in this case.

Signed on March 31, 2010

**Jennifer B. Coffman, Judge**
**United States District Court**